UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 06-124-JBC**

**MARTHA A. LAWSON,** **PLAINTIFF,**

**V.**     **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**     **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits (DE 8, 15). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not

decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a fifty-four-year-old female with a high-school education. AR 35. She has past relevant work ("PRW") experience as a certified nurses' aide. AR 54. She alleges disability beginning on September 4, 2002, as a result of a heart attack she suffered on that date, hypertension, depression, and neck and back pain. AR 29. The plaintiff filed a claim for Supplemental Security Income ("SSI") and

Disability Insurance Benefits ("DIB") on January 5, 2004, which was denied initially and on reconsideration. AR 28. After a hearing held on January 10, 2005, Administrative Law Judge ("ALJ") Don C. Paris determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff has not engaged in substantial gainful activity. AR 36. At step 2, the ALJ found that the plaintiff's affective/mood disorder, generalized anxiety disorder, coronary artery disease status post myocardial infarction with stent placement, and degenerative changes of cervical spine and lumbar spine were severe impairments. *Id.* The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. At Step 4, the ALJ found that the plaintiff could not perform her past relevant work. AR 37. The ALJ concluded at Step 5, based on the Medical-Vocational Guidelines, that the plaintiff could perform a significant number of other jobs in the national economy. *Id.* On March 14, 2006, the Appeals Council denied the plaintiff's request for review of the ALJ's determination, and this matter became ripe for review by this court. AR 16-18.

The matter currently before the court is also not the plaintiff's first claim for SSI and DIB. The plaintiff first applied for SSI and DIB on September 27, 2002, AR 96-98, and her application was denied initially and on reconsideration. AR 258-68. A hearing was then held before ALJ Ronald M. Kayser on October 20, 2003. AR 272. In a decision dated December 29, 2003, ALJ Kayser found the plaintiff was

not disabled. AR 269-80. Like ALJ Paris, ALJ Kayser found the plaintiff was not disabled at Step 5 of the five-step analysis. AR 279-80. Unlike ALJ Paris, who found the plaintiff was able to perform a restricted range of light work, ALJ Kayser determined that the plaintiff could perform a significant range of medium work. AR 280. On April 20, 2004, the Appeals Council denied the plaintiff's request for review of ALJ Kayser's decision. AR 28. The plaintiff apparently elected not to appeal this decision any further.

**III. Legal Analysis**

The plaintiff objects to the ALJ's determination based on six grounds: (1) that the administrative record is incomplete, requiring a remand; (2) that the ALJ erred in determining that her testimony lacked credibility; (3) that the ALJ failed to properly weigh the medical opinions of her consulting physicians, Drs. Atcher and Lima, and her treating physician, Dr. Vaida; (4) that the ALJ improperly relied on unsigned medical review forms in determining that the plaintiff was not disabled; (5) that the ALJ erroneously relied on the reports of Dr. Rita Ratliff; and (6) that the ALJ improperly relied on the opinions of several non-examining state experts.[1]

---

[1] The plaintiff also alleges at various points in her brief that the ALJ erred in considering other unsigned reports and opinions of non-examining state experts. DE 11, at 10-11, 16-17. The ALJ's written opinion, however, indicates no reliance on or citation of the records that the plaintiff protests. This is most likely because these records were generated in regard to the plaintiff's earlier claim for benefits, the denial of which became final on December 29, 2003. As the ALJ did not rely on these records in his opinion, the plaintiff's claims of error based on this alleged reliance are unfounded.

In contrast, the plaintiff also contends that the ALJ improperly failed to consider a great deal of medical evidence in the administrative record. DE 11, at
Case: 5:06-cv-00124-JBC   Doc #: 16   Filed: 11/28/06   Page: 4 of 15 - Page ID#: 258

4

**A. Preliminary Matters**

In its scheduling order of June 23, 2006, the court stated that judicial review would be "on written motion" and that, although memoranda in support of the parties' motions were not to exceed fifteen pages, expansions of page limitations would be granted "only if good cause [was] shown." DE 7, at 1. On August 22, 2006, the plaintiff moved to file a memorandum in excess of fifteen pages on the ground that the extra pages were "necessitated by the large transcript and legal arguments concerning the weight that should have been accorded to the evidence contained therein." DE 9, at 1. The court granted the plaintiff's motion, and the plaintiff submitted a thirty-eight-page brief along with her motion for summary judgment.

The plaintiff's brief opens with a three-page "Statement of the Case" in which one of the plaintiff's arguments for reversal is presented. This is followed by a seven-page "Statement of Facts" which discusses two more of the plaintiff's points of error. Next, the brief contains a twenty-four-page section entitled "Medical Evidence" which describes the plaintiff's medical records "Exhibit by Exhibit." DE 11, at 10. The plaintiff sprinkles her remaining arguments for reversal throughout this section, also on an exhibit-by-exhibit basis; the same points of error

---

12-13. However, an ALJ need not discuss every piece of evidence in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004). The ALJ stated in his written opinion that he had reviewed "all of the evidence in the record," and the plaintiff has failed to present evidence to the contrary. The plaintiff's argument for reversal on this ground must therefore be rejected as well.

are generally repeated – often in exactly the same words – when the plaintiff discusses later exhibits to which the same objection applies.  Usually, however, evidence is described without any explanation as to its relevancy to the plaintiff's exceptions to the ALJ's ruling.  Finally, the brief concludes with the plaintiff's "Argument," a four-page restatement of one of her grounds for reversal followed by the blanket statement that the ALJ improperly ignored the opinions of the plaintiff's treating physicians.  DE 11, at 38.

    This manner of briefing does not constitute "good cause" for the extension of page limitations.  Certainly, an attorney must be given leeway within which to craft his or her arguments and make strategic decisions.  At the same time, the page limitations exist as a means of conserving the resources of the parties and the court and encouraging the parties to sharpen their arguments on appeal.  As the preceding paragraph shows, much of the plaintiff's brief in this case is repetitive, disorganized, and irrelevant.  In short, it demonstrates the necessity for these page limitations.

    The plaintiff's claims regarding the unusual complexity of this case are not completely unfounded, given the numerous points of error she raises on appeal and the fact that the Commissioner also sought an extension of the page limitations.  The court notes, however, that the style of briefing seen in this case has apparently become a theme with the plaintiff's counsel.  *See Banks v. Comm'r of Soc. Sec*, 5:06-CV-20-JBC (twenty-seven-page brief); *Rose v. Comm'r of Soc. Sec*, 5:06-CV-

6

74-JBC (thirty-two-page brief).  Thus, before such lengthy briefs become the rule rather than the exception, the court cautions the plaintiff's counsel that future motions to exceed page limitations will be denied except in the most unusual circumstances.  Counsel for the plaintiff is further admonished that, while memoranda in excess of fifteen pages will be welcomed if required by the exigencies of particular cases, briefs utilizing the unnecessarily convoluted approach seen in this case will no longer be tolerated.  Like all attorneys practicing before this court, counsel for the plaintiff must submit his arguments in a clear, well organized, efficient, and understandable manner.

Having addressed this preliminary matter, the court will consider the plaintiff's arguments in turn.

**B. The Incompleteness of the Record**

The plaintiff perceives a discrepancy between the length of the January 10, 2005, hearing before ALJ Paris and the length of the transcript of that hearing. According to the transcript, the hearing began at 2:45 p.m. on January 10, 2005, and concluded at 4:00 p.m. that day.  AR 49, 74.  The transcript of the hearing, however, covers only twenty-six pages in the administrative record.  AR 49-74.  Based on these facts, the plaintiff suggests that the hearing transcript is incomplete and requests that the court remand this case for failure to provide a full administrative record.  As the plaintiff has provided no evidence other than the opinion of her counsel to support this assertion and the Commissioner has certified

that the administrative record contains a full and accurate record of the proceedings in this case, the court must deny the plaintiff's claim for relief on this ground.

### C. The ALJ's Credibility Determination

The plaintiff claims that the ALJ erred in evaluating her subjective claims of pain and other physical limitations. She also notes that this failure by the ALJ was particularly prejudicial because, when the Vocational Expert ("VE") was instructed to consider her testimony regarding her limitations, the VE testified that she would be unable to work. AR 73. The Commissioner is required to consider all of a claimant's symptoms, including pain, in determining whether she is disabled. 20 C.F.R. § 404.1529(a). Before these symptoms will lead to a finding of disability, however, medical signs must exist which show the claimant has an impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). When such medical signs are present, the Commissioner must then evaluate how the intensity and persistence of the symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(c); *see also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the claimant's daily activities, the frequency and intensity of the claimant's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the claimant's pain. *See Felisky*, 35 F.3d at 1039-40;

8

20 C.F.R. § 404.1529(c)(3).

The ALJ found that the plaintiff's affective mood disorder, generalized anxiety disorder, coronary artery disease status post myocardial infarction with stent placement, and degenerative changes of the cervical and lumbar spine were "severe" impairments.  AR 31-32.  Despite such impairments, the ALJ concluded that the claimant's testimony regarding her pain was incredible.  In so finding, the ALJ specifically relied on Dr. Ratliff's report dated March 23, 2004, in which Dr. Ratliff stated that the plaintiff had no significant exertional or mental limitations.  AR 365-70.  The ALJ also noted that tests performed by Dr. Hollingsworth on February 16, 2004, indicated that the plaintiff had moderate exercise tolerance and normal blood pressure; he also stated that the plaintiff had failed to stop smoking, despite being warned to do so by her physicians.  AR 33, 436-41.  The ALJ also rejected the assessment of Dr. C.C. Smith, the plaintiff's chiropractor, that the plaintiff was totally disabled, claiming this opinion was inconsistent with the medical evidence and the plaintiff's daily lifestyle.  AR 33, 414-16.  The plaintiff's daily activities include driving and walking short distances, performing light household chores, cooking, and reading.  AR 53, 63-67, 323, 353-54.  ALJ Paris also noted that the opinion of a chiropractor is not considered an opinion from an accepted medical source.  AR 33.

ALJ Paris cited the appropriate factors and considered not only the medical evidence of record, but also the claimant's activities and her opportunities for

9

treatment. His conclusion that her allegations were incredible in light of her daily lifestyle, her doctor's opinions that she was not severely limited, and her failure to comply with treatment was supported by substantial evidence.

### D. Weight Given to the Opinions of the Plaintiff's Physicians

The plaintiff also claims that the ALJ failed to give the proper weight to the opinions of the plaintiff's physicians, Drs. Atcher, Lima, and Vaida. Specifically, the plaintiff claims that these doctors' opinions clearly demonstrate that she is unable to perform unskilled work. *See* Soc. Sec. Ruling 96-9p (stating that unskilled sedentary work requires the ability to understand, remember, and carry out simple instructions; to make judgments that are commensurate with the functions of unskilled work; to respond appropriately to co-workers and supervisors; and to deal with changes in a routine work setting).

On November 17, 2004, Dr. Vaida submitted a "To Whom It May Concern" letter stating that the plaintiff had been treated at his clinic for several months and suffered from depression and anxiety. AR 471. Dr. Vaida indicated that her central symptom was fatigue, which seemed to be a cause rather than an effect of her depression. *Id.* He also noted that the plaintiff appeared to believe that she suffered from mononucleosis. *Id.* The Sixth Circuit has repeatedly held that the opinions of a treating physician are entitled to significant deference. *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, ALJ Paris credited the opinion of Dr. Vaida and incorporated his opinion that "her

mental impairments [were] secondary to [her] medical . . . condition of fatigue" into his written decision. AR 33. Most importantly, Dr. Vaida never opined that the plaintiff was completely disabled or that she could not perform sedentary work. The ALJ properly considered Dr. Vaida's medical opinion.

The plaintiff was also examined by consulting physicians, Drs. Atcher and Lima.[2] Dr. Atcher saw the plaintiff on March 22, 2004. Dr. Atcher diagnosed the plaintiff as having adjustment disorder with depressed features. AR 363. He also stated that the plaintiff had difficulty understanding, remembering, and carrying out even simple tasks and instructions and opined that she would not do well with supervisors or co-workers. *Id.* He assigned her a Global Assessment of Functioning ("GAF") of 60. *Id.* The opinion of a consulting physician is not entitled to the deference due the opinion of a non-treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ rejected Dr. Atcher's opinion on the ground that it was inconsistent with the preponderance of the evidence. AR 33. The ALJ properly considered Dr. Atcher's opinion, and his decision to reject it in favor of evidence to the contrary, including the opinion of Dr. Vaida, was supported by substantial evidence.

Dr. Lima examined the plaintiff on January 29, 2003. The ALJ did not

---

[2]While the plaintiff generally refers to Dr. Atcher as a consulting physician with the Social Security Administration, she also suggests at one point in her brief that Dr. Atcher is the plaintiff's treating physician. DE 11, at 37. The record conclusively shows that Dr. Atcher examined the plaintiff only once and never administered any treatment to her. Thus, the court considers Dr. Atcher to be a consulting physician for the purposes of this administrative review.

expressly cite to Dr. Lima's opinion in finding the plaintiff not to be disabled, most likely because his examination was performed in conjunction with the plaintiff's earlier application for benefits that became final on December 29, 2003.  However, Dr. Lima opined that the plaintiff was "able to understand instructions and [would] not have trouble recalling them" and that she would "be able to manage stressors typically found at work."  AR 182.  Thus, Dr. Lima's assessment of the plaintiff does not support a finding that she was disabled.

Finally, the plaintiff alleges that her treating physicians have "effectively pronounced her disabled" and that these assessments should have been found controlling.  DE 11, at 38.  The plaintiff does not cite the opinion of any particular treating physician in support of this statement, and the court is at a loss to determine the opinions to which the plaintiff refers by this statement.  As a result, the court is unable to say how ALJ Paris allegedly erred in his consideration (or lack thereof) of these opinions.  In any event, the plaintiff has not referred the court to any treating physician who found her to be disabled, and the court's review of the record did not reveal any such physician.  The court finds that the ALJ properly considered the opinions of the plaintiff's treating physicians.

### E. Unsigned Medical Review Forms

The plaintiff claims that the ALJ erred in relying on unsigned medical assessments of her in determining that she was not disabled.  AR 477, 482.  These "medical assessments" are actually forms accompanying the Commissioner's

determinations, at the initial and reconsideration levels, that the plaintiff was not disabled. While the ALJ did cite to these forms and determinations in his opinion, he did so primarily as a means of describing the procedural posture of the plaintiff's case. There is no indication that he relied on them in making his determination that the plaintiff was not disabled. The plaintiff's argument that ALJ Paris's citation to these forms requires reversal of his decision is erroneous.

**F. Examinations Performed by Dr. Ratliff**

The plaintiff also claims the ALJ erred in relying on the report of Dr. Rita Ratliff. In her brief, the plaintiff references two examinations by Dr. Ratliff. The first was performed on December 28, 2002, in connection with the plaintiff's earlier SSI and DIB application. AR 163-66. The second was completed on March 23, 2004, and is discussed by ALJ Paris in his opinion in this case. AR 33, 365-70. Dr. Ratliff's 2002 examination is not discussed by ALJ Paris, a point the plaintiff appears to concede when she states in her brief that "it is just as well as [sic] ALJ Paris decided to fail to review" that report. DE 11, at 13. Thus, the court will focus only on the plaintiff's objections to Dr. Ratliff's 2004 report.

The plaintiff first claims that ALJ Paris should not have relied on Dr. Ratliff's report because another ALJ, Mark R. Dawson, opined that Dr. Ratliff's opinions "are useless and a waste of claimant's time and the agency's money." *See* Plaintiff's Exhibit B. This opinion from ALJ Dawson, however, is dated July 24, 1998, and related to a case in which the claimant required orthopedic and mental

13

status examinations. Dr. Ratliff is a cardiology specialist, and, since the plaintiff suffered a heart attack, her opinion has greater relevance in this case than the one before ALJ Dawson. In any event, the plaintiff has pointed to no principle of law that would require an ALJ to ignore a physician's report based solely on the personal opinions of another ALJ.

The plaintiff also suggests that the ALJ erred in relying on Dr. Ratliff's report because she did no objective testing and because she did not mention that she had previously examined the plaintiff in 2002. Neither of these arguments has merit. Dr. Ratliff's report indicates that she performed an extensive physical examination of the plaintiff on March 23, 2004, and the plaintiff has provided no suggestion that Dr. Ratliff was required to mention her earlier examination of the plaintiff in her most recent report. The ALJ properly utilized the 2004 examination report from Dr. Ratliff in making his determination.

**G. The Opinions of Non-Examining State Experts**

Finally, the plaintiff alleges that ALJ Paris erred in relying on the reports of various state experts who presented opinions on her disability status without examining her. *See* AR 371-73, 374-88, 417-35, 442-51. The plaintiff's suggestion that such reports carry no probative weight is erroneous. The Commissioner considers the opinions of non-examining sources in the same manner as other medical opinions. 20 C.F.R. § 404.1527(f). While such reports may be considered, they are entitled to less weight than a treating physician's opinion and

14

may be rejected if contrary to the conclusions of a treating physician. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). ALJ Paris did not rely solely on the reports by the non-examining physicians; instead, he merely noted that they provided further support for his conclusion that the plaintiff was not disabled. AR 33. He placed primary reliance on the opinions of Drs. Ratliff and Vaida and even conceded that the opinions of the non-examining physicians were "not entitled to controlling weight." *Id.* The ALJ's utilization of the state experts' reports in this manner was appropriate.

**IV. Conclusion**

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **DENIED**.

Signed on November 28, 2006



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY